# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

RANDOLPH L. BEACH

VERSUS

HARTFORD LIFE & ACCIDENT
INSURANCE COMPANY

CIVIL ACTION

13-362-SDD-SCR

## RULING

This matter is before the Court on the *Motion for Summary Judgment*[1] filed by the Defendant, Hartford Life & Accident Insurance Company ("Hartford" or "Defendant"). The Plaintiff, Randolph L. Beach ("Plaintiff") has filed an *Opposition*[2] to the motion, to which the Defendant filed a *Reply*.[3] For the reasons which follow, the Court finds that the Defendant's motion should be GRANTED.

## I. FACTUAL BACKGROUND

Plaintiff was formerly employed by Electrical Reliability Services, a participant in a group long-term disability benefit plan ("Policy" or "Plan") sponsored by its affiliate, Emerson Electric Company, and underwritten by an insurance policy issued by Hartford. This Policy is governed by the Employee Retirement Security Act of 1974 ("ERISA").[4]

---

[1] Rec. Doc. No. 13.
[2] Rec. Doc. No. 19.
[3] Rec. Doc. No. 20.
[4] 29 U.S.C. § 1001, *et seq.*

The terms of the Policy vest Hartford with the discretionary authority to determine eligibility for benefits and to interpret the Policy. Plaintiff contends that, since around December 30, 2009, he has been and will continuously remain disabled based on a condition of osteoarthritic changes in his left knee following a 2008 surgery. While still employed by Electrical Reliability Services, Plaintiff made a claim for disability benefits under the Policy referred to above. Hartford contends that, under the terms of the Policy, benefits are not payable during the designated 180 day Elimination Period. Further, if during the Elimination Period, and for twenty-four months following this period, a participant is prevented from performing one or more of the essential duties of his/her own occupation due to accidental bodily injury, sickness, or other qualifying conditions, the individual would be eligible to receive disability benefits. This twenty-four months is referred to as the "Own Occupation" period or standard of disability. The Policy also provided that, if after twenty-four months following the Elimination Period, the participant continued to be prevented from performing any one or more of the essential duties of any occupation due to injury, sickness, or other qualifying condition, the participant may continue to receive long-term disability benefits up to a maximum period of time designated in the Policy. This is referred to as the "Any Occupation" period or standard of disability.

With respect to Plaintiff, Defendant contends that the maximum period of benefits that could be applicable was until age sixty-six. If the participant is eligible for benefits, the Policy provides that monthly, long-term disability benefits are paid at sixty percent of the employee's pre-disability earnings. However, eligible gross disability benefits are subject to an offset for other income received by the participant, including any Social

Security disability benefits received.

In 2010, Plaintiff submitted a claim for long-term disability benefits due to an asserted disability date of December 30, 2009. Plaintiff complained of knee pain due to a diagnosis of osteoarthritis of the left knee. At the time of this complaint, Plaintiff was employed by Electrical Reliability Services as a Field Engineer. Following application of the 180 day Elimination Period, Defendant approved Plaintiff's long-term disability benefits, effective June 28, 2010, under the "Own Occupation" standard set forth in the Policy. Defendant had determined that Plaintiff was prevented from performing the material duties of his own occupation, which involved medium physical demand level work. Thus, Defendant approved benefits to Plaintiff for the twenty-four month Own Occupation period.

On December 29, 2011, Defendant sent Plaintiff correspondence advising that his benefits under the Own Occupation period would end on June 28, 2012. This letter also advised Plaintiff that the applicable standard for disability would change to the Any Occupation standard, and the Defendant would begin a review to determine if Plaintiff would qualify for continued benefits under that standard. As part of this review, Defendant obtained information from Plaintiff and his treating physicians which included updated medical information and records from those physicians. Defendant also obtained an Independent Medical Examination ("IME") by a local physician, Dr. Scott Petrie, who practices in Gonzales, Louisiana, and specializes in Orthopedic Surgery. Defendant contends Dr. Petrie performed a thorough examination of Plaintiff, both general and specific to his knee condition, in conjunction with a review of Plaintiff's medical history and records from 2008-2012. Part of this examination included an

evaluation by Dr. Petrie of Plaintiff's knee strength and range of motion. Dr. Petrie's notes indicate that Plaintiff was treated conservatively and had arthroscopic surgery with follow-up treatment until October of 2010; however, Plaintiff did not have any additional treatment until January of 2012.

Dr. Petrie concluded that Plaintiff was capable of performing sedentary work with restrictions for climbing and standing for extended periods of time, in addition to restrictions in kneeling, squatting, and maneuvering. However, Dr. Petrie also concluded that Plaintiff could be on his feet for up to an hour at a time with periodic breaks.

During this claim review, Hartford also obtained an Employability Analysis to identify any occupations which Plaintiff would be qualified to perform considering his medical condition, education, training, and experience. The Employability Analysis was conducted by a Rehabilitation Case Manager utilizing OASYS (Occupational Access System), which is a computerized job matching system that cross references an individual's qualifications profile with 12,741 occupations classified by the United States Department of Labor in the Dictionary of Occupational Titles.[5] Defendant contends that the Rehabilitation Case Manager considered Plaintiff's functional capabilities, limitations noted by his doctors, his work and education history, and additional considerations and adjustments to Plaintiff's overall work profile. Through this analysis, Defendant contends that various occupations were identified for which Plaintiff was qualified.

---

[5] Rec. Doc. No. 13-4, pp. 12-25 (Bates Nos. H00355-H00368).

Based on the information submitted by Plaintiff and his treating physicians, the IME conducted by Dr. Petrie, and the Employability Analysis, Defendant determined that Plaintiff was not qualified for continued disability benefits under the Any Occupation standard of the Policy. On June 25, 2012, Defendant advised Plaintiff in writing that he was no longer qualified for disability benefits under the Any Occupation standard, and he would no longer receive benefits beyond June 27, 2012.[6] This correspondence also contained a summary of the information considered and reviewed by the Ability Analyst in reaching Plaintiff's claim determination. The Ability Analyst also addressed Plaintiff's Social Security Disability benefits award and explained that the standards governing the receipt of Social Security Disability benefits vary from that under Defendant's Policy.

The letter also advised that Defendant had determined that Plaintiff was not precluded from performing the material duties of any occupation for which he was otherwise qualified by his education, training, and experience, and with consideration of his functional capabilities and medical condition.[7] Through his counsel, Plaintiff appealed this claim determination; however, Defendant contends that, on appeal, Plaintiff did not present any new medical evidence or information.

During the appeal review, Defendant obtained an Independent Medical Review[8] by a second physician, Dr. Rosaline Vaquez. Dr. Vasquez conducted a detailed review of the medical records from Plaintiff's treating physicians,[9] laboratory data and imaging, along with records and information from Dr. Petrie who had performed the IME on behalf

---

[6] Rec. Doc. No. 13-2, pp. 13-17 (Bates Nos. H00083-H00087).
[7] *Id.*
[8] Rec. Doc. No. 13-3, pp. 96-109 (Bates Nos. H00303-H00314).
[9] Dr. Barry Rills and Dr. Cherie Leblanc.

of Defendant. Also considered by Dr. Vasquez were the Attending Physician Statements and Plaintiff's Affidavit.

Dr. Vasquez also communicated with both of Plaintiff's treating physicians. She reported that Dr. Rills indicated that Plaintiff was fine as long as he did not engage in heavy physical work like squatting, climbing, and lifting heavy objects.[10] While he confirmed reported back pain, Dr. Rills also confirmed that there was never any imaging or medical intervention related to reported back pain, and that surgery was no longer being considered for Plaintiff's knee since he was doing well. When questioned whether Plaintiff could perform full-time sedentary level activity with the ability to change positions, Dr. Rills reported that such work "would be fine."[11] Dr. Cherie Leblanc was contacted by Dr. Vasquez, but was unable to provide any information as Dr. Leblanc's last clinical note on Plaintiff was from 2010, and she maintained that she did not have authorization to release Plaintiff's medical information.[12]

Dr. Vasquez's report ultimately concluded that, based on the totality of information available regarding Plaintiff's medical condition, Plaintiff would be capable of performing a sedentary level occupation on a full-time basis with accommodation for changing positions and having predictable meal times.[13] This sedentary work capability was found to apply as of June 27, 2012.

---

[10] Rec. Doc. No. 13-3, pp. 96-109 (Bates Nos. H00303-H00314).
[11] *Id.* at p. 107 (Bates No. H00312).
[12] *Id.* Dr. Vasquez reports that she faxed a second release for Plaintiff and left messages for Dr. Leblanc which were never returned.

[13] *Id.* at p. 109 (Bates No. H00314).

Defendant concluded on appeal that Plaintiff was not eligible for long-term disability benefits under the Any Occupation standard for disability under the Policy. Plaintiff was advised in writing of this decision on February 28, 2013 by Hartford's Appeal Specialist.[14] Plaintiff was provided a detailed summary of the bases for this finding, notice of his ERISA rights, and informed that all administrative remedies were exhausted.

Plaintiff filed this lawsuit against Hartford on June 5, 2013, seeking review of Hartford's claim decision. Hartford has moved for summary judgment.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[15] The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[16] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[17] If the moving party "fails

---

[14] Rec. Doc. No. 13-2, p. 1-6 (Bates Nos. H00071-H00076).
[15] Fed. R. Civ. P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996).
[16] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir. 1995).
[17] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (*quoting Celotex*, 477 U.S. at 323-25, 106 S.Ct. at 2552).

to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."[18]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[19] The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[20] Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[21] The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[22] Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[23]

---

[18] *Id.* at 1075.
[19] *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).
[20] *Little*, 37 F.3d at 1075; *Wallace*, 80 F.3d at 1047.
[21] *Wallace*, 80 F.3d at 1048 (*quoting Little*, 37 F.3d at 1075). See also *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996).
[22] *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir. 1995).
[23] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

## B. ERISA - Standard of Review

It is undisputed that ERISA governs Hartford's Policy and Plaintiff's claims and that the LTD Policy at issue vests Hartford with discretionary authority to determine eligibility for benefits. "Standard summary judgment rules control in ERISA cases."[24] Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[25]

The Fifth Circuit also reviews *de novo* a district court's selection of the appropriate standard of review to be applied to an ERISA administrator's eligibility determination.[26] Unless the terms of the plan give the administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan[,]" an administrator's decision to deny benefits is reviewed *de novo*.[27] However, if the language of the plan does grant the plan administrator discretionary authority to construe the terms of the plan or determine eligibility for benefits, a plan's eligibility determination must be upheld by a court unless it is found to be an abuse of discretion.[28] Independent of the administrator's ultimate authority to determine benefit eligibility, factual determinations made by the plan administrator during the course of a benefits review will be rejected only upon a showing of abuse of discretion.[29]

In the ERISA context, "[a]buse of discretion review is synonymous with arbitrary

---

[24] *Cooper v. Hewlett–Packard Co.*, 592 F.3d 645, 651 (5th Cir. 2009) (quoting *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 225 (5th Cir.2004)).
[25] Fed. R. Civ. P. 56(a).
[26] *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 213 (5th Cir. 1999).
[27] *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).
[28] *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008) (citing *Firestone Tire & Rubber Co.*, 489 U.S. at 111, 115).
[29] *Meditrust Fin. Servs. Corp.*, 168 F.3d at 213.

and capricious review."[30]  This standard requires only that substantial evidence supports the plan fiduciary's decision.[31]  Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[32]  "A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence."[33]  Moreover, this court's "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness—even if on the low end."[34]

Where, as here, the insurance carrier is also the claims administrator, courts have recognized that an inherent conflict of interests exists.  However, following the Supreme Court's decision in *Metropolitan Life Insurance Co. v. Glenn*,[35] the Fifth Circuit joined the majority of the other circuits in repudiating application of a "sliding scale" standard of review of discretionary plan determinations where a possible conflict exists, and adopted the unitary abuse of discretion standard, weighing any conflict as a factor in that determination.[36]  The Fifth Circuit has explained that, "[i]n deciding how much weight to afford the apparent conflict here, we are guided by our decisions in *Holland* and

---

[30] *Cooper*, 592 F.3d at 652 (citing *Meditrust*, 168 F.3d at 214).
[31] *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004).
[32] *Id.* (quoting *Deters v. Sec'y of Health, Educ. & Welfare*, 789 F.2d 1181, 1185 (5th Cir.1986)).
[33] *Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009) (citing *Meditrust Fin. Servs. Corp.*, 168 F.3d at 215).
[34] *Corry v. Liberty Life Assur. Co. of Boston,* 499 F.3d 389, 398 (5th Cir. 2007) (quoting *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 297 (5th Cir.1999) (en banc)(*overruled on other grounds*).
[35] 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008).
[36] *Holland v. Int'l Paper Co. Ret. Plan,* 576 F.3d 240, 247 n. 3 (5th Cir. 2009).

*Schexnayder v. Hartford Life & Accident Ins. Co.*, 600 F.3d 465 (5th Cir. 2010).[37] In *Schexnayder*, we explained our application of the *Glenn* test:

> In reviewing the plan administrator's decision, we take into account ... several different considerations. These factors are case-specific and must be weighed together before determining whether a plan administrator abused its discretion in denying benefits. Any one factor may act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance.
>
> The interaction between the factors and the substantial evidence test is a relatively new issue after the Supreme Court's decision in *Glenn*. We have considered the interplay in only one prior published decision—*Holland*—in which we found that the conflict of interest was a minimal factor and that the evidence was more than sufficient to support the denial of benefits. However, a reviewing court may give more weight to a conflict of interest, where the circumstances surrounding the plan administrator's decision suggest "procedural unreasonableness."[38]

With these guidelines in mind, the Court turns to a review of the Plan Administrator's decision under an abuse of discretion standard.

### 1  Does Substantial Evidence Support Hartford's Decision?

Hartford contends that its "complete, conscientious and thorough" review of Plaintiff's medical records in conjunction with the assistance of outside medical consultants demonstrates that Hartford's denial of Plaintiff's claim was not arbitrary or capricious and not an abuse of discretion.[39] Hartford also contends it reviewed numerous items of documentation and medical records in its evaluation of Plaintiff's claim in addition to an IME and an Independent Medical Review. Hartford argues the

---

[37] *Crowell v. CIGNA Group Ins.*, 410 F. App'x 788, 793-94 (5th Cir. Nov. 7, 2011).
[38] *Id.*, quoting *Schexnayder*, 600 F.3d at 469 (citations and internal quotation marks omitted).
[39] Rec. Doc. No. 13-9, p. 18.

Employability Analysis performed further supports its claim determination. Thus, Hartford contends that everything contained in the administrative record unquestionably establishes a rational connection between the facts relied upon and the decision to deny Plaintiff long-term disability benefits. Hartford also avers that the Court must give deference to Hartford's factual findings and conclusions.

Plaintiff directs the Court to his Affidavit, wherein he attested that he cannot sit, walk, or stand, even if alternating these positions at will, for more than two hours without lying down and elevating his legs for 30 minutes for pain relief.[40] Plaintiff also notes that Dr. Petrie documented that his left knee will not likely improve over time and will, in fact, probably worsen.[41] Further, Plaintiff points to the opinion of his treating physician, Dr. Rills, who stated that Plaintiff's condition and limitations are permanent, and that he is totally disabled from even sedentary work.[42]

Plaintiff ostensibly contends that Hartford ignored or refused to credit his treating physician's opinion. Plaintiff is correct in urging that, "[t]he Supreme Court has held that 'courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician,' but a plan administrator 'may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of treating physicians.'"[43] Plaintiff cites *Schully v. Continental Casualty Company*,[44] where the district court held, and the Fifth Circuit affirmed, a finding that Hartford's plan administrator "deliberately

---

[40] Rec. Doc. No. 13-4, p. 50 (Bates No. H00393).
[41] Rec. Doc. No. 13-5, p. 144 (Bates No. H00662).
[42] Rec. Doc. No. 13-4, p. 11 (Bates No. H00354).
[43] *Schexnayder v. Hartford Life and Acc. Ins. Co.*, 600 F.3d 465, 469 (5th Cir. 2010)(quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).
[44] 380 F. App'x 437, 439 (5th Cir. June 7, 2010).

ignored" Schully's medical evidence in order to support its "preferential and predetermined conclusions." However, the record in this case distinguishes Plaintiff's case from *Schully*.

The administrative record reflects that both of the independent physicians obtained by Hartford to evaluate Plaintiff's claim took the opinions and medical records of Plaintiff's treating physicians into account in rendering their own determinations of Plaintiff's ability to work. Dr. Petrie's report references Plaintiff's complaints of pain and functional limitations, and includes references to Dr. Rill's medical records.[45] Likewise, Dr. Vasquez's report indicates that she fully considered all of Plaintiff's medical records, opinions, and notes from treating physicians and Dr. Petrie, as well as oral communications with these physicians, in her evaluation.[46] Hartford also contends that, although Dr. Rills did previously conclude that Plaintiff was disabled even for sedentary work, when contacted by Dr. Vasquez in connection with her review of Plaintiff's appeal, Dr. Vasquez reported that Dr. Rills advised that sedentary work, with the ability to change positions, on a full-time basis, "would be fine."[47] Plaintiff suggests this assertion is "especially ludicrous" considering that Dr. Rills' written notes and opinions which indicate Plaintiff's inability to perform sedentary work were recorded during the same time frame that Dr. Rills purportedly advised Dr. Vasquez to the contrary.[48]

Despite this suggested inconsistency, the Court must find from the totality of the

---

[45] Rec. Doc. No. 13-5, pp. 138-144 (Bates Nos. H00656-H00662).
[46] Rec. Doc. No. 13-3, pp. 98-109 (Bates Nos. H00303-H00314).
[47] *Id.* at p. 107 (Bates No. H00312).
[48] Rec. Doc. No. 19, p. 15.

administrative record that Hartford's determination was not an abuse of discretion. Dr. Rills' medical records and notes were clearly considered and evaluated in conjunction with those of the other physicians. Dr. Rills' conclusion that Plaintiff could not perform sedentary work does not undermine Hartford's ultimate decision. While Hartford clearly could not ignore or refuse to give credence to Dr. Rills' records and opinion, it was under no obligation to give overriding significance in consideration of the other physicians' opinions and findings with respect to Plaintiff's condition. Hartford was not required to accord special weight to Dr. Rills' diagnosis. Moreover, it is obvious from the record that Dr. Rills' notes, records, and opinions were not disregarded or ignored but were reviewed and referenced by both of the independent physicians obtained by Hartford and by the analyst during the appeal review.[49]

The Court finds that there is substantial evidence in the administrative record to support Hartford's decision in this case. Because the record contains sufficient evidence regarding Plaintiff's ability to work that "reasonable minds might accept as adequate," the Court simply cannot find that there is no rational connection between the known facts and the decision, or between the found facts and the evidence.[50]

### 2. The Employability Analysis

---

[49] *See Black & Decker*, 538 U.S. at 834; *cf. Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 602–03 (5th Cir.1994) (accepting an administrator's reliance on diagnoses of independent physicians, where those diagnoses conflicted with the diagnoses of the claimant's physicians).

[50] Plaintiff argues that Hartford's structural conflict of interest requires the Court to give less deference to the administrator's decision under Plaintiff's cited authority. However, the cases cited have been overruled by the Supreme Court in *Glenn, supra*. As explained by the Fifth Circuit in *Holland* and *Schexnayder*, discussed previously in this opinion, this structural conflict of interest is only a factor for the Court to consider in determining whether the plan administrator abused discretion. The Court has given this factor the appropriate weight and finds that the administrator did not abuse discretion in the determination.

As discussed above, Hartford obtained an Employability Analysis, conducted by a Rehabilitation Case Manager utilizing OASYS (Occupational Access System), a computerized job matching system that cross references an individual's profile with 12,741 occupations classified by the United States Department of Labor. Taking into account Plaintiff's functional capabilities as reported by Dr. Petrie, Plaintiff's physical limitations, and work and education history, the case manager identified various occupations for which Plaintiff would be qualified.

Plaintiff strongly challenges the accuracy of the Employability Analysis, arguing that Hartford made a crucial error regarding Plaintiff's earning potential which rendered a fatally flawed analysis and conclusion. Plaintiff further contends that, even after Plaintiff advised Hartford of this error, Hartford refused to address it on appeal, stating only that it properly relied on the findings of the Employability Analysis. Plaintiff argues that "Hartford's continued blind reliance upon the 'expertise' of its vocational rehabilitation consultant" demonstrates the arbitrary and capricious nature of the decision.[51] Plaintiff also argues that the Employability Analysis failed to adequately or accurately take into account Plaintiff's physical conditions and limitations.

Without conceding that it made an error,[52] Hartford responds that such an inadvertent error does not render the Employability Analysis invalid because, as Plaintiff conceded, there were two specific occupations identified that met or exceeded sixty

---

[51] Rec. Doc. No. 19, p. 9.
[52] Hartford notes that it assumes, only for the purposes of its *Motion for Summary Judgment*, that the higher pre-disability earnings index amount asserted by Plaintiff should have been used. Rec. Doc. No. 20, p. 2, n. 4.

percent of Plaintiff's pre-disability earnings which satisfied the requisite threshold.[53] Hartford also argues that Plaintiff's position ignores the fact that the Employability Analysis Report's listing of occupations indicates that it represents only a small sampling of the 244 occupations identified. Thus, Hartford asserts it is reasonable to consider that some significant percentage of those occupations would meet or exceed the pre-disability earnings amount reflected by the two occupations identified in the example listing. Finally, Hartford contends that all of Plaintiff's relevant information was considered in the Employability Analysis, including Plaintiff's work history and medical information.

The Court finds that, while the Employability Analysis may have been flawed, the totality of the administrative record still supports Hartford's decision. First, Hartford is correct that the two occupations identified met the requisite threshold despite the alleged error. Second, it is also true that a plan administrator is not even required by ERISA to obtain the opinion of a vocational expert. The Fifth Circuit has concluded that: "we will not hold that absent vocational rehabilitation evidence a plan administrator necessarily abuses his discretion in making a final determination of disability."[54] Rather, a reviewing court is to decide, "on a case-by-case basis, whether under particular facts the plan administrator abused his discretion by not obtaining the opinion of a vocational expert."[55] Finally, the record is clear that Hartford evaluated and considered much more information than just this Employability Analysis in arriving at its decision. Even if the Court excluded

---

[53] Rec. Doc. No. 13-4, pp. 12-23 (Bates Nos. H00355-H00366).
[54] *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1309 (5th Cir. 1994).

[55] *Id.*

the Employability Analysis from consideration, the totality of the remaining evidence would still be sufficient to support Hartford's determination.

### 3. The Award of Social Security Disability Benefits

Plaintiff contends that his award of Social Security disability benefits, especially in light of the fact that Hartford assisted Plaintiff in obtaining such benefits and gained a financial benefit in the offset from this award, is also evidence that Hartford acted arbitrarily and capriciously. Hartford counters that the Supreme Court, the Fifth Circuit, and the District Court for the Middle District of Louisiana have all rejected the argument that a plaintiff's receipt of Social Security disability benefits is controlling or binding on an ERISA plan administrator,[56] and that applicable jurisprudence shows that aiding a plan participant in receiving Social Security disability benefits does not preclude a plan administrator from reaching a contrary disability determination from that of the Social Security Administration. The Court agrees.

"Differences between the Social Security disability program and ERISA benefits plans caution against importing standards from the first into the second. ERISA plans are not subject to the rules and regulations governing Social Security determinations."[57] The Supreme Court made clear in *Black & Decker Disability Plan v. Nord*,[58] that there are differences between entitlement to Social Security benefits based on federal criteria and

---

[56] *See Black & Decker*, 538 U.S. 822 (2003); *Dubose v. Prudential Ins. Co. of America*, 85 F. App'x 371 (5th Cir. Dec. 24, 2003); and *Johnson v. Sun Life Assurance Co. of Canada*, No. 98-990-A, 2000 WL 33225469 (M.D. La. Nov. 29, 2000).

[57] *Hammond v. UNUM Life Ins. Co. of America*, No. 05cv632HTW-LRA, 2008 WL 906522, at *11 (S.D. Miss. Mar. 31, 2008)(citing 20 C.F.R. § 404.1545; *See also* 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2), which sets forth the SSA regulation that accords "special weight" to the medical opinion of an applicant's treating physician.).

[58] 538 U.S. 822 (2003).

ERISA plan benefits based on the interpretation of the terms in the plan at issue.

Clearly, an "ERISA administrator's duty is to address a contrary Social Security determination. An administrator's '[f]ailure to address a contrary SSA award can suggest "procedural unreasonableness" in a plan administrator's decision,' and can be one factor supporting that a denial of LTD benefits was arbitrary and capricious."[59] Additionally, "[e]ven where substantial evidence supports the denial of benefits, a failure to address a Social Security award can be a 'tiebreaker' to conclude that the insurer abused its discretion."[60] Here, in both the initial claim determination and the appeal review, Hartford specifically addressed Plaintiff's Social Security disability award and explained why this award, although considered by Hartford as a factor, was not controlling or binding.[61] These acknowledgments are sufficient under binding precedent.[62]

Hartford also relies on *Matney v. Hartford Life Insurance Co.*,[63] where the district court rejected the argument that Hartford should be estopped from terminating the plaintiff's disability benefits under the plan because Hartford had previously helped her obtain Social Security benefits. Notably, the court held:

> In the Fifth Circuit, furthermore, courts have refused to require that ERISA

---

[59] *McFadden v. Prudential Ins. Co. of America*, 877 F.Supp.2d 481, 492 (S.D. Miss. 2012)(quoting *Schexnayder*, 600 F.3d at 471 (citation omitted); *see Hamilton v. Standard Ins. Co.*, 404 Fed.Appx. 895, 898 (5th Cir. 2010) (unpublished).
[60] *Id.*, citing *Schexnayder*, 600 F.3d at 471.
[61] Rec. Doc. No. 13-2, p. 15 (Bates No. H00085) & Rec. Doc. No. 13-2, p. 5 (Bates No. H00075).
[62] *See Schexnayder*, 600 F.3d at 471 n. 3. ("We do not require Hartford to give any particular weight to the contrary findings; indeed, Hartford could have simply acknowledged the award and concluded that, based on the medical evidence before it, the evidence supporting denial was more credible.").

[63] No. A.302CV2278LBH, 2004 WL 3187081 (N.D. Tex. Dec. 27, 2004), *aff'd*, 172 F. App'x 571 (5th Cir. Mar. 27, 2006).

plan administrators adhere to a benefit determination by the Social Security Administration (SSA). *Milson v. St. Luke's Episcopal Hospital*, 71 F.Supp.2d 634, 639 n. 2. If courts made such findings, " 'ERISA fiduciaries would be stripped of all administrative discretion, as they would be required to follow the Department of Health and Human Services' decisions regarding social Security benefits, even where the Plan determines benefits under different standards or the medical evidence presented is to the contrary." ' *Id.* (quoting *Madden v. ITT Long Term Disability Plan for Salaried Employees*, 914 F.2d 1279, 1286 (9th Cir.1990)). Matney has thus failed to demonstrate that Hartford should be estopped from reaching a determination about her disability different from that of the SSA.[64]

Based on the foregoing, Plaintiff's claim that Hartford was arbitrary and capricious in its consideration of the Social Security disability benefits award is without merit. Moreover, the cases relied upon by Plaintiff are not binding on this Court, and are in fact distinguishable for the reasons set forth by Hartford in its *Reply* memorandum.[65]

---

[64] *Id.* at *14.
[65] The Court is bound by Fifth Circuit precedent and is more inclined to follow district court opinions within the Fifth Circuit as persuasive.

## III. CONCLUSION

For the reasons set forth above, the *Motion for Summary Judgment*[66] by the Defendant is GRANTED. Plaintiff's request for summary judgment under Rule 56(f)(1) of the Federal Rules of Civil Procedure is DENIED as moot for the reasons set forth in this opinion.

*Judgment* shall be entered accordingly.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on July 28, 2014.

*Shelly D. Dick*

**JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[66] Rec. Doc. No. 13.